```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

                                   :
MIRIAM Q.,                         :
                                   :
    plaintiff,                     :
                                   :
v.                                 :   CASE NO. 3:20cv1836 (RAR)
                                   :
KILOLO KIJAKAZI,                   :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
                                   :
    defendant.                     :
```

## RULING ON PENDING MOTIONS

Miriam Q. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated March 3, 2020. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case (Dkt. #19-1) and defendant's motion to affirm the decision of the Commissioner. (Dkt. #23-1.)

For the reasons that follow, plaintiff's motion to remand is GRANTED.

## FACTUAL BACKGROUND

On June 6, 2018, plaintiff filed for Title XVI supplemental security income. (R. 23.) Plaintiff claimed disabilities related to injuries from a car accident, arthritis in both ankles, left knee problems, diabetes, lower back discs, high blood pressure,

1

pelvis problems, anxiety, and depression. (Dkt. #19-2 ¶ 3.) Plaintiff previously filed applications on May 1, 2006, July 12, 2011, December 18, 2012, and April 28, 2017. (Dkt. #19-2 ¶ 2.)

On September 5, 2017, Dr. Yacov Kogan conducted a consultative examination of plaintiff as part of her April 28, 2017, disability application. Dr. Kogan opined that plaintiff had "no range of motion deficits and no neurological deficits that limit sitting, standing, walking, bending, lifting, carrying, reaching or finger manipulations." (R. 394.)

On October 22, 2018, Dr. Lewis Barton conducted a medical evaluation of plaintiff as part of her initial disability determination. Dr. Barton found that plaintiff had a light RFC and could occasionally lift or carry up to 20 pounds, frequently lift or carry up to 10 pounds, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, had no limitations in her ability to push or pull, could frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes and scaffolds. (R. 129-31.)

As part of plaintiff's disability reconsideration, Dr. Maria Lorenzo conducted a medical evaluation on March 5, 2019. Dr. Lorenzo opined that plaintiff had a light RFC. (R. 145.) Dr. Lorenzo concluded that plaintiff could occasionally lift or carry up 20 pounds, frequently lift 10 pounds, stand, sit, and

walk for a total of six hours in an eight-hour workday, had no limitations in her ability to push or pull, could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, and scaffolds. (R. 144.) Dr. Lorenzo also opined that plaintiff had no manipulative, visual, or communication limitations. (R. 144.)

On April 18, 2019, plaintiff visited an orthopedic clinic for right elbow pain. (R. 746.) It was noted that plaintiff had a history of right carpal tunnel syndrome and had a previous surgery. (R. 747.) Plaintiff had diminished sensation in the ulnar aspect of her right palm, but otherwise normal sensation. (R. 748.) Plaintiff's numbness and tingling was recreated with elbow flexion. (R. 748.) Plaintiff was ordered to have an EMG, as "it is unclear whether her numbness/tingling in an ulnar nerve distribution is secondary to cervical etiology versus cubital tunnel syndrome, as symptoms are re-created with both Spurling maneuver and elbow flexion." (R. 749.)

On September 26, 2019, plaintiff had an EMG done in response to her complaints of intermittent tingling and numbness in her right hand and intermittent shooting pain from her right elbow to her wrist. (R. 992.) An examination of plaintiff's arms showed "normal strength, reduced pinprick sensation in the right digit V; otherwise normal pinprick sensory exam and 2+ DTRs all through out [sic]." (R. 992.) The EMG results showed "moderate

3

median neuropathy at the right wrist (as in carpal tunnel syndrome), and a mild, chronic, ulnar neuropathy at the right elbow (as in cubital tunnel syndrome)." (R. 993.)

On December 3, 2019, plaintiff was referred to an orthopedic clinic for a follow up. Plaintiff was diagnosed with carpal tunnel and cubital tunnel syndromes on her left side after an examination where she had medial and ulnar nerve distributions, positive Durkins, positive phalans, positive elbow flexion, and positive tinels at the wrist and elbow. (R. 934.) Plaintiff was referred for a carpal tunnel recurrence release, a right cubital tunnel release, and left carpal tunnel and cubital tunnel release. (R. 935.)

On January 6, 2020, plaintiff had a pre-operative visit for her carpal tunnel and cubital tunnel release surgery. Plaintiff was not cleared for surgery on account of her uncontrolled diabetes. (R. 901.)

## THE ALJ'S DECISION

Plaintiff requested a hearing before an administrative law judge ("ALJ") on April 23, 2019. On February 4, 2020, a hearing was held before ALJ John Noel. The ALJ issued an opinion on March 3, 2020, finding that plaintiff was not disabled within the meaning of the Social Security Act.

Applying the five-step framework, the ALJ found at step one that plaintiff had not engaged in any substantial gainful

4

activity since June 6, 2018. (R. 25.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; diabetes mellitus; right elbow arthritis; anxiety disorder; and depressive disorder. (R. 25.)

At step three, the ALJ determined that plaintiff had no impairments or combination of impairments equal to a Listing. The ALJ concluded that plaintiff did not meet or medically equal Listing 1.04 (disorders of the spine). (R. 26.) The ALJ also determined that plaintiff's mental impairments did not meet or medically equal Listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders). (R. 26-27.) The ALJ relied on plaintiff's testimony and the opinions of the medical consultative examiners to conclude that plaintiff had mild to moderate limitations in certain areas of functioning, but she did not have two marked limitations or one extreme limitation to qualify for "paragraph B." (R. 27.) The ALJ also concluded that plaintiff failed to meet any of the criteria for "paragraph C." (R. 27.)

At step four, the ALJ determined that plaintiff had a light RFC. (R. 28.) The ALJ found that plaintiff could frequently climb ramps and stairs, occasionally climb ropes, ladders, and scaffolds, frequently balance, stoop, kneel, and crouch, and frequently reach overhead with the

5

right upper extremity. (R. 28.) The ALJ also found plaintiff capable of performing simple and repetitive tasks. (R. 28.)

The ALJ found both Dr. Barton and Dr. Lorenzo's opinions persuasive in part and noted that he had received exhibits that they did not have when they determined plaintiff's RFC. (R. 31-32.) The ALJ found that Dr. Barton's opinion was "well-reasoned, and relie[d] on the objective evidence of record and is supported by and consistent with the preponderance of the evidence." (R. 31.) The ALJ found that Dr. Lorenzo's opinion was "well-reasoned, and relie[d] on the objective evidence of the record and [was] generally supported and consistent with the evidence of record." (R. 32.)

At step five, the ALJ determined that plaintiff had no past relevant work history and is illiterate. (R. 34.) The ALJ relied on the testimony of vocational expert ("VE") Ruth Baruch to determine that there were jobs within the national economy that plaintiff could perform, including price marker, hand packer/inspector, and electrical assembler. (R. 35.) The ALJ then concluded that plaintiff was not disabled within the meaning of the Social Security Act. (R. 36.)

Plaintiff requested a review by the Appeals Council, which affirmed her denial on November 16, 2020. Plaintiff then appealed to this Court.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner's conclusion is based upon the correct legal principles, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to an individual who has a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits the claimant's mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the

8

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## DISCUSSION

Plaintiff argues that the ALJ's residual functional capacity (RFC) determination is not supported by substantial evidence. This Court agrees. As discussed below, the Court finds that the ALJ failed to develop the record and that the opinions of Dr. Barton and Dr. Lorenzo were stale. Because remand is warranted, the Court need not address plaintiff's other arguments. See Faussett v. Saul, No. 3:18cv738(MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (remanding without addressing the plaintiff's other arguments since remand meant the plaintiff would have a new hearing).

---

regulations, the Commissioner then asks whether, despite the severe impairment, the claimant has the residual functional capacity to perform the past work; and (5) if the claimant is unable to perform the past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

9

1. *Failure to Develop the Record*

The ALJ failed to sufficiently develop the record regarding plaintiff's carpal tunnel and cubital tunnel syndromes.

An ALJ has an affirmative duty to develop the record because social security disability hearings are non-adversarial. Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996). Regardless of whether a plaintiff challenges the sufficiency of the record, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." Prieto v. Comm'r of Soc. Sec., No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021); see also Cortes v. Berryhill, No. 3:16-cv-01910 (JCH), 2018 WL 1392903, at *2 (D. Conn. Mar. 19, 2018).[4] This is true even when the plaintiff is represented by counsel.

---

[4] It is not clear whether plaintiff is raising this argument. Plaintiff cites Staggers v. Colvin, No. 3:14-CV-717 (JCH), 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) for the proposition that "an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Earlier in her brief, plaintiff states that no medical consultant endorsed a restriction of frequent overhead reaching. (Dkt. #19-1 at 12.) She then says that "[b]y borrowing an RFC promulgated for different medical conditions (Barton knee, Lorenzo back), the ALJ either exceeded his limited role as adjudicator or abnegated it entirely" and cites to Staggers. (Dkt. #19-1 at 13.) Staggers and the other cases plaintiff relies upon involve an ALJ's affirmative duty to develop the record when there is no medical opinion regarding the claimant's RFC. Staggers, 2015 WL 4751123, at *3; Mungin v. Saul, No. 3:19 CV 233 (RMS), 2020 WL 549089, at *5 (D. Conn. Feb. 4, 2020); Pacheco v. Saul, No. 3:19 CV 987 (WIG), 2020 WL 113072, at *7 (D. Conn. Jan. 10, 2020). Plaintiff does not explicitly raise the argument that the ALJ failed to develop the record, though she does argue that the RFC is not supported by substantial evidence and appears to argue that this error is in part due to the ALJ assigning the plaintiff a limitation of frequent overhead reaching without a medical opinion. Regardless of whether plaintiff affirmatively raised the issue, the Court has the ability to address whether the ALJ fulfilled his obligation to develop the record.

10

Moreau v. Berryhill, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018). Whether the ALJ has developed the record is a threshold issue. Caruso v. Saul, No. 3:18CV1913(RMS), 2019 WL 5853527, at *4 (D. Conn. Nov. 8, 2019). "Remand is warranted if the ALJ fails to fulfill his or her duty to develop the record." Martin v. Berryhill, No. 16 CV 6184 (FPG), 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017).

The ALJ had an affirmative duty to develop the record and seek a medical source statement opinion on plaintiff's abilities in light of her diagnosis of carpal tunnel and cubital tunnel syndromes. The ALJ noted that Dr. Barton and Dr. Lorenzo did not have all the evidence the ALJ had when determining plaintiff's RFC, but simply concluded that the new evidence supports his RFC. (R. 31-32.) There is no opinion from any other doctors in the medical record as to plaintiff's functional abilities after the diagnoses of carpal tunnel and cubital tunnel syndromes. "[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Pacheco, 2020 WL 113702, at *7. The ALJ had a duty to develop the record in light of this gap. The ALJ had "many avenues" to develop and complete the record, including requesting additional records from treatment providers, ordering a new consultative exam, or seeking a

11

medical expert's opinion. Mungin, 2020 WL 549089, at *10 (citing Martin v. Berryhill, No. 16 CV 6184 (FPG), 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017)).

The Commissioner argues that "an RFC need not precisely match a medical opinion" for it to be proper. (Dkt. #23-1 at 9.) The Commissioner relies upon Trepanier v. Comm'r of Soc. Sec., 752 F. App'x 75, 79 (2d Cir. 2018) and Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) to argue that an ALJ does not err when the RFC determination is supported by substantial evidence even if there is no formal medical source or opinion.

In Trepanier, the Second Circuit concluded that while the plaintiff's treating physician did not opine on the claimant's ability to lift 50 pounds, it could reasonably be inferred that the claimant could lift 50 pounds because the claimant was cleared to return to his job which required him to lift 50 pounds on occasion. Trepanier, 752 F. App'x at 79.

In Monroe, the Second Circuit concluded that the ALJ's opinion was based on substantial evidence where the ALJ relied on a treating physician's contemporaneous treatment notes in rejecting a physician's opinion which was the only assessment of the claimant's RFC in the record. Monroe, 676 F. App'x at 8.

Both Trepanier and Monroe are distinguishable from the present case. The records in those cases contained other evidence on which the ALJs could base their RFC determinations.

12

Here, the record only contains plaintiff's diagnoses and no evidence of plaintiff's limitations, if any, after her diagnoses. Delgado v. Berryhill, No. 3:17-CV-54 (JCH), 2018 WL 1316198, at *9 (D. Conn. Mar. 14, 2018) (remanding where "the absence of a complete and reliable functional assessment of [the plaintiff's] physical limitations is an obvious gap"). Instead, the ALJ assessed plaintiff's RFC without any medical evidence regarding the effects of plaintiff's carpal tunnel and cubital tunnel syndromes on her functional abilities. The lack of medical evidence concerning plaintiff's limitations is an obvious gap in the record, and there was no other evidence for the ALJ to rely on when crafting the RFC.

The Commissioner further argues that regardless of the opinions of Dr. Barton and Dr. Lorenzo, the ALJ asked the vocational expert ("VE") how a limitation of frequent handling and fingering would affect the ability to perform the three jobs listed, and because the VE testified that the jobs could still be performed, "[s]uch a limitation would be sufficient to account for Plaintiff's carpal tunnel syndrome." (Dkt. #23-1 at 9.) However, this argument does not cure the defect. No medical source opined on plaintiff's RFC with her carpal tunnel and cubital tunnel syndromes; therefore, the ALJ's decision that plaintiff could frequently handle and finger is not supported by substantial evidence.

Given the ALJ's failure to develop the record, remand is warranted on this issue.

1. *Staleness*

Though the Court need not address plaintiff's other arguments in light of the remand, plaintiff's argument that the opinions of Dr. Barton and Dr. Lorenzo are stale is related to the ALJ's failure to develop the record and merits discussion.

Plaintiff argues that the opinions of Dr. Barton and Dr. Lorenzo became stale because the ALJ relied upon new evidence added to the record which contradicted the state medical examiners' RFCs.

In West v. Berryhill, the court held that an ALJ erred by affording great weight to a non-examining state source's medical opinion when subsequent evidence about the plaintiff's carpal tunnel syndrome "may have altered [the non-treating source's] conclusions." West v. Berryhill, No. 3:17-cv-1997, 2019 WL 211138, at *6 (D. Conn. Jan. 16, 2019).[5] West relied on a comparison between Hidalgo v. Bowen, 822 F.2d 294 (2d Cir. 1987) and Camille v. Colvin, 652 F. App'x 25 (2d Cir. 2016) (summary order). West distinguished between cases like Camille where

---

[5] West relies on Hidalgo v. Bowen, 822 F.2d 294 (2d Cir. 1987). The standard for treating physicians in Hidalgo has since been abrogated by regulation. Camille v. Colvin, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). "But the principle endures that an ALJ may not rely on the stale opinion of a non-examining consulting physician where subsequent evidence may alter those findings, as recognized by the Second Circuit and other judges in this district." West, 2019 WL 211138, at *6 n.7 (citing cases).

subsequent evidence "did not differ materially" from the medical evidence that the non-examining physician considered and Hidalgo, where subsequent evidence "may have altered the [non-examining consultant's conclusions" had the evidence been available. West, 2019 WL 211138, at *5.

The subsequent evidence of plaintiff's carpal tunnel syndromes and cubital tunnel syndromes may have altered the conclusions of Dr. Barton and Dr. Lorenzo. The ALJ noted that Dr. Barton did not have Exhibits 11F, 12F, 15F, 16F, and 19F through 22F when he made his RFC determination. (R. 31.) The ALJ also noted that Dr. Lorenzo did not have Exhibits 19F through 22F when making her RFC determination. (R. 32.)

Exhibits 19F through 22F include the diagnoses for carpal tunnel syndromes and cubital tunnel syndromes. (R. 932, 934, 935, 1005, 1007, 1008.) These records show that plaintiff had an abnormal EMG which showed moderate median neuropathy in her right wrist, consistent with carpal tunnel syndrome, and mild, chronic, ulnar neuropathy at her right elbow, consistent with cubital tunnel syndrome. (R. 934, 993, 1007.) Plaintiff had a positive Durkin's compression test at the cubital tunnel in her right arm and a positive flexion test at her elbow with ulnar nerve symptoms. (R. 1003.) Plaintiff also had diminished sensation in her right fifth digit and ulnar palm. (R. 748.) Plaintiff had medial and ulnar nerve distributions, positive

15

Durkin's, positive phalans, positive elbow flexion, and positive tinels at the wrist and elbow on her left side. (R. 934.) Plaintiff was referred to a hand surgery clinic for a carpal tunnel and cubital tunnel release in both arms. (R. 935, 1003, 1008.) The notes by Dr. Ravi Viradia indicate that plaintiff tried conservative therapies, including wrist splints and Heelbo splints, but they did not alleviate plaintiff's numbness and tingling. (R. 935, 1003.)

Additionally, only Dr. Lorenzo had available subjective complaints that, now with hindsight, may be symptoms of plaintiff's carpal tunnel and cubital tunnel syndromes. On her adult function report from January 2019, prior to her diagnoses, plaintiff indicated that she had trouble using her hands. (R. 298.) Plaintiff also indicated she had trouble dressing, bathing, caring for her hair, shaving, and feeding herself, but listed the reason as "arthritis." (R. 295.)

The medical records, which were unavailable to Dr. Barton and Dr. Lorenzo when they made their RFC determinations, provide objective evidence for plaintiff's carpal tunnel and cubital tunnel syndromes, and these records "may have altered [their] conclusions." West, 2019 WL 211138, at *6.

The Commissioner makes two separate arguments as to why the ALJ did not err by relying on the opinions of Dr. Barton and Dr. Lorenzo.

16

First, the Commissioner argues that the RFCs of the medical examiners are not stale because "the ALJ reviewed the record as a whole." (Dkt. #23-1 at 10.) The Commissioner fails to explain how a review of the record as a whole changes or defeats the staleness of the opinions of Dr. Barton and Dr. Lorenzo.

Second, the Commissioner argues that there is a functional assessment regarding plaintiff's carpal tunnel syndromes because Dr. Kogan assessed that plaintiff had no deficits that would affect finger manipulation. (Dkt. #23-1 at 9.) Since Dr. Kogan's consultative examination occurred in 2017, two years prior to plaintiff's diagnoses of carpal tunnel and cubital tunnel syndromes, (R. 993), this argument is unpersuasive.

Because the diagnoses and records of carpal tunnel and cubital tunnel syndromes came after Dr. Barton and Dr. Lorenzo reviewed plaintiff's medical file and may have altered their conclusions, their opinions are stale.

Remand is warranted because the ALJ failed to develop the record and the opinions of the two state medical examiners are stale. On remand, the ALJ should "employ whichever . . . methods are appropriate to fully develop the record as to [plaintiff's] RFC."[6] Martin v. Berryhill, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017).

---

[6] The Court also notes that plaintiff is now 51 years old; as plaintiff indicated in her brief, because she has an RFC of light work, unskilled, and illiterate, she would meet the requirements for disability under the Medical

**CONCLUSION**

Based on the foregoing reasons, plaintiff's motion for an order to reverse or remand the Commissioner's decision (Dkt. #19-1) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #23-1) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 30th day of March, 2022, at Hartford, Connecticut.

/s/
Robert A. Richardson
United States Magistrate Judge

---

Vocational Guidelines under Rule 202.09. While this issue is not before the Court on this appeal, it may be something for the ALJ to note on remand.